UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR IMMIGRATION STUDIES**,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**.<br><br>Defendant. | Case No. 1:22-cv-02107 (TNM) |

### MEMORANDUM OPINION

The Center for Immigration Studies sought disclosure of a litany of documents from the U.S. Citizenship and Immigration Services related to the Department of Homeland Security's Temporary Protected Status designation of Haiti. USCIS produced most of the requested documents, with one exception: an internal policy memo from the Acting Director of USCIS to the Secretary of Homeland Security allegedly discussing a temporal tweak to the designation. The Center thus brings this suit under the Freedom of Information Act to compel release of the memo. USCIS resists production. It argues that FOIA's Exemption 5 protects the memo from disclosure. And it claims that releasing the document would foreseeably harm the interests protected by that exemption.

The Court agrees. The memo represents a recommendary proposal from a subordinate to a supervisor about a policy decision still in the works. And despite the Center's arguments to the contrary, there is no indication the Secretary agreed with or endorsed the reasoning contained in it. Such documents fall squarely within Exemption 5. More, the agency has satisfied its burden to demonstrate that release would harm an interest protected by the exemption— that release

would chill candid speech about sensitive issues of foreign policy. Finally, the Court is satisfied that the agency has already released all nonsegregable portions of the memo to the Center. USCIS is thus entitled to summary judgment.

## I.

This FOIA dispute centers on Haitian immigration policy. On May 22, 2021, the Department of Homeland Security issued a press release announcing a new designation of Haiti for Temporary Protected Status ("TPS"). Pl. Cross-Mot. Summ. J., ECF No. 31, at 1. According to the press release, the Secretary established the TPS designation because there were "extraordinary and temporary conditions in Haiti that prevent nationals from returning safely." *Id.* These included "human rights abuses," "serious security concerns," and "the COVID-19 pandemic's exacerbation of a dire economic situation and lack of access to food, water, and healthcare." *Id.* The TPS Designation included a specific cutoff date for eligibility, known as the "continuous residence date." *Id.* The press release specified "that TPS will apply only to those individuals who are already residing in the United States as of May 21, 2021." *Id.* So those who traveled to the United States from Haiti after the press release supposedly were not eligible. *Id.*

The TPS designation was finalized in the Federal Register on August 3, 2021. *Id.* But with a small tweak—the continuous residence date had been extended to July 29, 2021. *Id.* The Federal Register Notice does not explain the change. *See generally* Fed. Register Notice, ECF No. 35-2. This case stems from that unexpected edit.

The Center submitted a FOIA request seeking records related to the press release and the subsequent Federal Register Notice. Compl., ECF No. 1, ¶ 6. Displeased with the resulting production by USCIS, it brought this suit under FOIA, arguing that USCIS failed to adequately

conduct a search for responsive records and wrongfully withheld nonexempt responsive records.[1] Compl. ¶¶ 14–23. Years of production and squabbles ensued. But the parties winnowed down their disputes to one remaining challenge. Def. Mot. Summ. J., ECF No. 29, at 1–2.

The final disagreement concerns a single, three-page document sent from USCIS Acting Director Tracy L. Renaud to the Secretary on July 27, 2021. Decl. J. Panter, ECF No. 29-1, ¶ 11. The memo has been largely redacted, but it still shows the sender, recipient, and date. CRD Mem., ECF No. 29-2. It bears the subject line "Modification of Continuous Residence Date for Temporary Protected Status for Haiti." *Id.* And it provides four dispositions to the Secretary, one of which he can choose to endorse by signature: "Approve," "Disapprove," "Modify," or "Needs discussion." *Id.* Otherwise, only the headings remain: "Purpose," "Background," and "Recommendation." *Id.* Everything else has been redacted.

USCIS moves for summary judgment. Def. Mot. Summ. J. at 5. It argues the redactions are justified by FOIA Exemption 5, as they "consist of pre-decisional, intra-agency, deliberative recommendations to the Secretary of Homeland Security about a potential change in a particular aspect of foreign policy." *Id.* (cleaned up). The Center cross-moves for summary judgment. Pl. Cross-Mot. Summ. J. at 2. It argues that "Exemption 5's deliberative process privilege does not protect policy determinations and justifications that have been adopted, formally or informally," by the agency. *Id.* And it insists that USCIS's "justifications for withholding the substantive contents of the Modification Memo fall far below what is required to meet the agency's burden to support its withholdings." *Id.*

---

[1] The original suit included the DHS as a defendant, but the Center voluntarily dismissed all claims against it. Voluntary Dismissal, ECF No. 10.

The Court requested an unredacted version of the document so it could perform *in camera* review. Minute Order 1/15/2025. Having done so, it is now set to rule on the cross-motions for summary judgment.

## II.

Courts can typically resolve FOIA cases on summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Agencies moving for summary judgment in FOIA cases must show that the contested records "are exempt from disclosure under FOIA." *Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) (cleaned up). Agencies usually rely on declarations that "describe[] the justifications for withholding the information with specific detail, demonstrate[] that the information withheld logically falls within the claimed exemption, and [are] not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.* This burden remains with the agency even if a plaintiff cross-moves for summary judgment. *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999).

Even if an exemption applies, the records must still be released unless the agency shows that release would cause "reasonably foreseeable harm to an interest that the exemption protects." *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024). The agency "must provide a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede the interests protected by a FOIA exemption." *Id.* (cleaned up).

More, an agency must release any segregable portions of a record that is otherwise exempt, typically by proceeding "line-by-line." *Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021). Still, segregability is more of an art than a science. Otherwise releasable material may be withheld if it is "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

### III.

The memorandum is exempt from disclosure under Exemption 5. And USCIS has shown that releasing the document would cause foreseeable harm. Finally, all nonsegregable material has already been released to the Center. So USCIS is entitled to summary judgment.

Exemption 5 to FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision "incorporates the privileges available to Government agencies in civil litigation," including, as relevant here, "the deliberative process privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). That privilege recognizes the need for candor in the brainstorming stages by protecting "recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (cleaned up). By shielding agency spitballing from disclosure, bureaucrats are not haunted by the looming specter of a headline publicizing their half-baked ideas. So discussion is richer, and, hopefully, the ultimate decisions are better.

To determine whether Exemption 5 applies, courts ask whether a document is "predecisional" and "deliberative." *Sierra Club*, 592 U.S. at 268. "Documents are predecisional if they were generated before the agency's final decision on the matter." *Id.* (cleaned up). And

5

"they are deliberative if they were prepared to help the agency formulate its position," *id.* (cleaned up), or if they "reflect[] the give-and-take of the consultative process," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The Center does not really dispute that, at one point, the memo was predecisional and deliberative. Pl. Cross-Mot. Summ. J. at 10. Nor could it—the memo was a proposal from the USCIS Acting Director, whose division lacked final authority over the continuous residence date, to the Secretary, who had the final say over that question, to make a prospective change to the Haiti TPS policy. Decl. J. Panter ¶ 16. The advisory nature of the document is underscored by the blank section at the bottom of the memo permitting the Secretary to signal his potential disapproval or to offer instructions to modify the proposal. CRD Mem. at 3. And "recommendations from subordinates to superiors lie at the core of the deliberative-process privilege." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

Conceding that the privilege applied at one point, the Center insists that "circumstances exist which force [the memo's] contents outside the protection of Exemption 5's deliberative process privilege." Pl. Cross-Mot. Summ. J. at 10. It claims that the memo was "adopted, formally or informally," as the agency's final position on the continuous residence date when it was signed by the Secretary. Pl. Cross-Mot. Summ. J. at 11. As a result, the Center argues the memo lost protection under the deliberative process privilege. *Id.* To be clear, the version of the document disclosable under the Center's request does not bear the Secretary's signature.

Still, the Court credits the Center's argument that the memo was ultimately signed on the "Approval" line by the Secretary. The emails strongly suggest as much. *See* Pl. Ex. 6, ECF No. 31-9, at 4 (email from executive secretary of DHS attaching Hati documents and noting "[p]lease see [Secretary] signed documents attached"). Sure, perhaps the Secretary signed the memo on

one of the signature fields that did not indicate his approval—such as "Disapprove," "Modify," or "Needs discussion." CRD Mem. at 3. But the subject line of the executive secretary's email was "RE: For [Secretary] decision/*approval*/e-signature – USCIS TPS Haiti Notice." Pl. Ex. 6 at 3 (emphasis added). And it makes little sense for the executive secretary to simply remark "Let us know if there is anything further you need!" while attaching the signed memo if there was something more the Secretary was seeking from USCIS. *Id.* at 4. So the Court assumes that the Secretary ultimately endorsed the memo on the line indicating his approval. *Cf. Greenspan v. Bd. of Gov'nrs of Fed. Reserve Sys.*, 643 F. Supp. 3d 176, 185 (D.D.C. 2022) (explaining agency bears the burden of showing no genuine dispute as to any material fact).

But still, the Center's argument falters. True, "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. But "[t]o adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an *express* choice to use a deliberative document as a source of agency guidance." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (cleaned up).

A manager's signed approval below a recommendation is not an express adoption. That is the clear teaching of *Abtew v. U.S. Department of Homeland Security*, 808 F.3d 895, 899 (D.C. Cir. 2015) (Kavanaugh, J.). There, the court rejected the plaintiff's argument that a decisionmaker's initialing of a document was an express adoption. *Id.* While the Circuit acknowledged that "[i]nitialing a memo may suggest approval of the memo's bottom-line recommendation," it stressed that it would nonetheless "be wrong and misleading to think that

7

initialing necessarily indicates adoption or approval of all of the memo's reasoning." *Id.* Thus the court concluded that "initialing alone" could not "transform" a predecisional document into an agency's "final decision." *Id.*

So too here. The Center has offered no evidence beyond a bare signature to indicate that the Secretary endorsed the memo's rationale. Under *Abtew*, that is insufficient. The Secretary's signature did not strip the memo of its predecisional character. *Cf. Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 358–59 (2d Cir. 2005) (finding express adoption where the agency "publicly and repeatedly depended" on the underlying document "as the primary legal authority justifying and driving" a policy change, and "[t]he record ma[de] clear that the [agency] embraced the [document's] reasoning as its own.").

Nor does it matter that the agency ultimately changed the continuous residence date, as likely suggested by the memo. Merely "carr[ying] out the recommended decision" does not mean "that the memorand[um] accurately reflected the decisionmaker's thinking." *Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983); *accord Jud. Watch, Inc.*, 847 F.3d at 739 ("The Secretary might have relied on the memo's reasoning in deciding to take the action it recommended, but it is also possible that he did not."). Instead, there must be concrete evidence that the policymaker relied on a document's analysis and incorporated it by reference into his final decision. *See Nat'l Council of La Raza*, 411 F.3d at 358. A court "may not infer that the agency is relying on the reasoning contained in [a] subordinate's report" where the decisionmaker, "having reviewed [the] subordinate's non-binding recommendation, makes a 'yes' or 'no' determination without providing any reasoning at all." *Id.* at 359; *see also Machado Amadis*, 971 F.3d at 370 ("[A] recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without

8

comment. To the contrary, the Supreme Court has held that the deliberative process privilege protects recommendations that are approved or disapproved without explanation.").

Yet all the Center offers here is a mere endorsement of a bottom line. *Cf. Niemeier v. Watergate Special Pros. Force*, 565 F.2d 967, 973 (7th Cir.1977) (express adoption found where final opinion quotes predecisional document, claims consistency with its conclusions, and states that the document is on file with the agency). Without more, the Court cannot conclude that the memo—reasoning and all—has been adopted by DHS. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184–85 (1975) ("[B]ecause the evidence utterly fails to support the conclusion that the reasoning in the reports is adopted by the Board as its reasoning, even when it agrees with the conclusion of a report, we conclude that the reports . . . fall within Exemption 5."). Limiting the exemption in this way "guards against confusing the issues and misleading the public by dissemination of documents suggestions reasons and rationales for a course of actions which were not in fact the ultimate reasons for the agency's action." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (cleaned up). USCIS is entitled to the deliberative process exemption.

The Center also argues that the memorandum lost its deliberative and predecisional nature because it became the "working law" of the agency. Pl. Cross-Mot. Summ. J. at 8. This theory is an ill-fitting shoe here. The "working law" of an agency is a body of "binding agency opinions and interpretations" used by the agency "in the discharge of its regulatory duties and in its dealing with the public." *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) (cleaned up). Documents falling under the working law exception to the deliberative process privilege are typically internal agency mandates from superiors to subordinates clarifying the position of the agency on recurring issues and instructing staff how to apply that

policy to fact. *See, e.g.*, *Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 677–81 (D.C. Cir. 1981). These documents are often kept on hand at an agency to be used as precedential guides for future issues that arise. *Coastal States Gas Corp.*, 617 F.2d at 868 (Working law memos were "straightforward explanations of agency regulations in specific factual situations" that were "akin to a 'resource' opinion" and "like examples in a manual.").

Advisory memoranda hashing out the pros and cons of an ongoing policy debate do not serve as a body of working law. They do not "reflect[] [the agency's] formal or informal policy on how it carries out its responsibilities." *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010). They are not "routinely used and relied upon by field personnel" in performing their administrative duties. *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (*Tax Analysts I*) (cleaned up). Nor do "they simply explain and apply established policy." *Tax Analysts v. IRS*, 294 F.3d 71, 81 (D.C. Cir. 2002) (*Tax Analysts II*). Instead, they reflect the "agency give-and-take of the deliberative process by which the decision itself is made." *Abtew*, 808 F.3d at 899 (cleaned up). Thus the memo at issue is not part of the working law of USCIS.

The Center tries a different tack. It argues that USCIS has failed to meet its evidentiary burden. It insists that USCIS's affidavit in support of summary judgment "does not provide sufficient evidence to prove the redacted portions of the Modification Memo are subject to the deliberative process privilege." Pl. Cross-Mot. Summ. J. at 13. This affidavit was submitted by Jarrod Panter, the Acting Associate Center Director and Chief FOIA Officer in the FOIA Unit of USCIS. Decl. J. Panter ¶ 1. The Center argues that the Panter affidavit "fails to consider whether the policy determinations and justifications within the [memo] were adopted, formally or informally by DHS[,] in its ultimate decision to change the continuous residence date." *Id.* at

14.  More, the Center insists that the affidavit cannot be relied on because it is contradicted by other evidence in the record showing that the memo was ultimately adopted by DHS. *Id.* at 17.

The Court disagrees with this circuitous argument.  "In ruling on summary judgment, courts may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reps. Comm. for Freedom of the Press*, 3 F.4th 350 at 361.  The Panter declaration satisfies all these conditions.  First, the affidavit, combined with the redacted memorandum itself, adequately demonstrates that the memorandum was predecisional and deliberative.  *See Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (agency affidavits, *Vaughn* index, and unredacted portions of documents work "in tandem" to illuminate the privileged nature of redacted materials).  The Panter affidavit describes the memorandum as "a recommendation related to the continuous residence date for Haitian TPS designations, from USCIS, an agency lacking decisional authority on this matter, to the DHS Secretary, which possesses decisional authority." Decl. J. Panter ¶ 16.  And it stresses that the memorandum "recounts the thinking and considerations regarding a policy matter prior to DHS reaching a final decision." *Id.* ¶ 17.  More, the memorandum itself reflects its advisory nature, given it is couched in terms of a "Recommendation." CRD Mem. at 3.  Together, this evidence establishes that the memo was a nonbinding proposal sent from a subordinate to a supervisor to aid an ongoing agency decisionmaking process.  Such documents are, of course, at the heart of the deliberative process privilege. *Sears, Roebuck, & Co.*, 421 U.S. at 150.

The Center's remaining evidentiary challenge falls flat for reasons already discussed.  The affidavit is not contradicted by other evidence in the record, as the record does not establish that DHS expressly adopted the memorandum.  Again, even crediting the Center's assertions that

11

the memo was ultimately signed by the Secretary, this does not mean the memo lost its predecisional and deliberative character. Nor has the Center offered any evidence that the agency has acted in bad faith. So the Court relies on the Panter declaration, in addition to the record, in holding USCIS is entitled to summary judgment.

Because the agency has met its burden to show that the memo is entitled to the deliberative process privilege, the Court asks whether it has shown that the memo's release would cause "reasonably foreseeable harm" to the interests protected by that privilege. *Leopold*, 94 F.4th at 37. The agency has done so. It stresses that divulging the memo "would foreseeably harm USCIS's legitimate interest in the critical and candid give-and-take of this vital consultative process as the agency determines how to proceed in a fraught area implicating foreign relations." Decl. J. Panter ¶ 28. And it contends that release would "interfere with USCIS's ability to make sound judgments on future sensitive foreign policy matters." Decl. J. Panter ¶ 28. This rationale falls squarely within the interests the exemption was designed to protect: frank communication within the agency without fear of public reprisal. *Coastal States Gas Corp.*, 617 F.2d at 866. A public spotlight on highly politicized and delicate foreign policy questions would cast a pallor over deliberations. It may tempt bureaucrats to issue politically expedient advice rather than provide honest consultation. Uninhibited discussion is essential to make similarly difficult judgment calls in the future. The agency has met its burden of showing foreseeable harm.

That brings the Court to segregability. USCIS conducted two line-by-line reviews of the memo and released what it considered to be reasonably segregable. Decl. J. Panter ¶¶ 21–22. When an agency conducts such a line-by-line review, it is "entitled to a presumption that [it] complied with [its] obligation" to release segregable material. *Boyd v. Crim. Div. of U.S. Dep't*

*of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007).  More, the Panter declaration attests that any further disclosure "cannot be made without revealing decision-making processes which are protected by the deliberative process privilege."  Decl. J. Panter ¶ 23.  The affidavit and record weigh heavily towards a finding that the agency has satisfied its segregability burden.  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The combination of the *Vaughn* index and [agency affidavits] [is] sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated.").  The Court also conducted its own *in camera* review of the memorandum, and it is satisfied that USCIS has released all reasonably segregable portions of the document.

## IV.

To sum up, the deliberative process privilege shields the memo from further release.  And the agency has met its burden to show that further disclosure would foreseeably harm important interests protected by that privilege.  Finally, the Court is satisfied that all reasonably segregable portions of the memo have already been disclosed to the Center.  USCIS is thus entitled to summary judgment.  A separate Order will issue today.

Dated: February 5, 2025                                              TREVOR N. McFADDEN, U.S.D.J.